UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOUHAN RIVERA

                PLAINTIFF         VERIFIED COMPLAINT WITH
                                                            JURY DEMAND

-AGAINST-

                                                             INDEX #

DEA SPECIAL AGENT DAVID T. SAMILO;     DATE PURCHASE
DEA SPECIAL AGENT EDWARD TRACY
DEA SPECIAL AGENT JOSEPH DOHERTY
DEA SPECIAL AGENT ROB GARCIA
SPECIAL AGENT FRANCIS RAU
SPECIAL AGENT GERARD RICCIARDI
DEA GS KEVIN LARKIN

                DEFENDANTS

---

The Plaintiff, complaining of the Defendants through his attorney, Tamara Harris, alleges as follows:

## THE PARTIES

1. That the plaintiff, JOUHAN RIVERA, is a 43 year-old resident of Springfield, Massachusetts. He is a United States citizen born in Puerto Rico.

2. All Defendants were at all relevant times herein, agents, employees, officers, and servants of the Department of Justice's Drug Enforcement Administration's Long Island District Office, 175 Pinelawn Road #205, Melville NY 11747. These Defendants are being sued in their individual and official capacities.

3. At all relevant times herein, the individual Defendants acted jointly and in concert with each other. Each individual Defendant had the duty and the opportunity to protect Plaintiff from the unlawful actions of the other individual Defendants but each individual Defendant failed and refused to perform such duty, falsely arrested plaintiff without probable cause, maliciously

1

prosecuted plaintiff by concealing and supplying false information to the Manhattan District Attorney's Office, thereby proximately causing Plaintiff's injuries; to wit, his unlawful detention in prison for almost ten months.

## JURISDICTION

4. Jurisdiction is founded upon the existence of a Federal Question and diversity of jurisdiction.

## FIRST CAUSE OF ACTION:
### BIVENS ACTION (28 U.S.C §1331) AGAINST DEFENDANTS/DEA AGENTS SAMILO, TRACY, DOHERTY, GARCIA, RAU, RICCIARDI, AND LARKIN FOR VIOLATING PLAINTIFF'S 14TH AMENDMENT LIBERTY RIGHT, FOURTH AMENDMENT RIGHT AGAINST UNLAWFUL SEIZURES, FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION. SIXTH AMENDMENT RIGHT TO COUNSEL AND EIGTH AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT

5. On October 22, 2013, Jouhan Rivera accepted an invitation from his friend and neighbor, Abner Reyes-Ribot, to travel from Massachusetts to Bronx County, New York, for the purpose of visiting family.

6. Both Reyes-Ribot and plaintiff had family members living in New York, and decided to take the trip together in Mr. Reyes-Ribot's vehicle, a Black Mazda.

7. Jouhan Rivera was travelling as a passenger in Reyes-Ribot's Black Mazda, as Abner Reyes-Ribot drove from Massachusetts to New York.

8. Unbeknownst to plaintiff, as Abner Reyes-Ribot was driving in the vicinity of the Cross Bronx Expressway and Ellis Avenue, all of the above defendants (DEA Agents Samilo, Larkin, Tracy, Doherty, Garcia, Rau, and Ricciardi) began to follow the Black Mazda without any reasonable suspicion or probable cause to believe a crime was afoot.

9. The above named defendants continuously followed the vehicle plaintiff was travelling in, onto the Cross Bronx Expressway, onto Jerome Avenue, and through a number of side streets in Bronx County without any reasonable basis or legal justification to do so.

10. Plaintiff and the driver of the car in which he was riding had not engaged in any misconduct or traffic infractions when the above defendants elected to follow them and then, ultimately, stop their vehicle.

11. All of the above named defendants participated in the illegal and unjustified stop of plaintiff, Mr. Reyes-Ribot and the vehicle they were in.

13. A DEA report regarding this incident was prepared by DEA Special Agent David Samilo and based on information provided by all of the above named defendants.

14. Upon being stopped by all of the above named defendants, Defendants Samilo began to interrogate plaintiff, who is Hispanic, about whether he was an illegal alien and whether he was armed.

15. Plaintiff was responsive to these questions, and answered both in the negative.

16. Without any probable cause to arrest plaintiff, Samilo ordered plaintiff out of the vehicle and placed him in handcuffs- after calling him a "motherfucker" in Spanish and threatening to take him out physically if he did not immediately remove himself from the car. No drugs had been recovered when plaintiff was placed under arrest. Samilo and all other defendant's lied about their unlawful arrest in their DEA Report, claiming they simply asked plaintiff to step out of the car, while a consent search was performed on the vehicle.

17. As plaintiff was being placed in handcuffs, he advised Defendant Samilo and all other named defendants (Larkin, Tracy, Doherty, Garcia, Rau, and Ricciardi) that he had sustained a hand injury, and the handcuffs were aggravating that injury because they were too tight.

18. At that point Samilo tightened the handcuffs even further on plaintiff's wrists, until plaintiff complained of excruciating pain. Despite plaintiff's pleading to loosen the handcuffs, none of the above captioned defendants would do so, forcing plaintiff to endure the pain. At that point plaintiff was thrown into the back of a police vehicle in handcuffs even though no drugs had even been located at this point in time. All named defendants lied about this unlawful arrest in their DEA Report to make it appear that the recovery of alleged drugs from Reyes-Ribot's car preceded the arrest. However, it did not.

19. At the time plaintiff was removed from the car and arrested, there was no evidence of any contraband or criminality. No contraband had been recovered from Reyes-Ribot's vehicle at the time of arrest.

20. A search of the plaintiff's person after arrest produced negative results and no drugs or weapons were found on him.

21. The arrest of plaintiff was completely without probable cause.

22. Without consent, the police then began a protracted search of Reyes-Ribot's vehicle.

23. The police allegedly discovered cocaine within the spare tire well in Reyes-Ribot's vehicle in a location that was not near or even close to being in plaintiff's possession, and certainly not in plain view of the defendants or plaintiff.

24. Reyes-Ribot ultimately admitted to SA Tracy and Rau that the cocaine was his, and that plaintiff's only involvement was accepting his invitation for a ride to New York, where plaintiff was going to visit his family.

25. Reyes-Ribot's statement completely exonerated plaintiff of any wrongdoing and the alleged cocaine was found in a concealed location within Reyes-Ribot's own car, which plaintiff did not own.

26. There was no evidence plaintiff knew there was alleged cocaine concealed in the spare tire well of Reyes-Ribot's car, and there was no evidence plaintiff had ever actually or constructively possessed those drugs.

27. No DNA or fingerprint testing was done to confirm if plaintiff had even touched the duffle bag in which the alleged drugs were contained, and no laboratory test was ever done on the alleged drugs to confirm or deny if it even was cocaine.

28. Before even discovering the alleged drugs, and without a shred of evidence to indicate plaintiff had committed any crime, defendants arrested plaintiff.

29. The defendants insisted on charging plaintiff for Criminal Possession of a Controlled Substance 1st Degree and Criminal Possession of a Controlled Substance 3rd Degree even though the alleged cocaine was found in the spare tire well of Reyes-Ribot's car after an unconsented to search. All defendants decided to charge plaintiff despite the fact that Reyes-Ribot gave a statement exculpating plaintiff; a search of plaintiff person and bodily cavities yielded negative results; and defendants had confirmed the car did not belong to plaintiff.

30. While in custody Defendant Samilo sought to obtain information from plaintiff by using illegal, abusive, and violent interrogation tactics. Specifically, after a strip search of plaintiff for drugs proved negative, Samilo demanded plaintiff tell him what information he had about the drugs that were allegedly found.

31. Plaintiff insisted he had no idea what Samilo was talking about and demanded a lawyer and the right to use a telephone to call a lawyer. Samilo refused to respect plaintiff's 5th Amendment right to remain silent and his right to refuse to answer further questions, and his 6th Amendment right to counsel. Rather in an attempt to induce plaintiff to talk, Samilo kicked plaintiff extremely hard in his leg and began to insult and curse at him, calling him derogatory names like

"stupid motherfucker", and threatening to harm him and let him rot in jail if he did not provide information.

32. Then, after arresting the plaintiff, all of the aforementioned defendants tried to conceal the exculpatory statement made by Reyes-Ribot, by having the Manhattan DA prosecute a case against plaintiff for criminal possession of a controlled substance, all the while knowing they were concealing exculpatory information from the District Attorney's Office -including Reyes-Ribot's statement that the drugs were his and plaintiff was innocent; and evidence that the car belonged exclusively to Reyes- Ribot; and the fact they had arrested plaintiff long before the alleged drugs were located; and the fact that Samilo had used illegal and violent methods to induce a confession from a suspect who exercised his 5th amendment Miranda rights and 6th amendment right to counsel.

33. When SA Samilo, acting in concert and with the agreement of the other named defendants, forwarded an affidavit to the Manhattan DA about what transpired he intentionally concealed the fact that Reyes-Ribot had rendered a confession which exonerated the plaintiff of any wrongdoing. This conduct was malicious.

34. Had the Manhattan District Attorney's Office known of the existence of such exculpatory information in a case where there was no evidence plaintiff even knew Reyes-Ribot had alleged drugs concealed in the spare tire well of his car, they would never have prosecuted the plaintiff.

35. The criminal case against plaintiff terminated in his favor and was ultimately dismissed.

36. All of the defendants' actions were unreasonable, and no reasonable federal agent would believe it was permissible to: (1) arrest a person when there was no evidence of any criminality at the time of arrest; (2) physically abuse a person in custody by tightening handcuffs to aggravate an injury and kicking/threatening them to induce a confession (and refusing to loosen

the handcuffs) when it is clear they are causing excruciating pain; (3) violently retaliate against a person who expresses a desire to exercise his 5th Amendment right to remain silent and 6th Amendment right to counsel; and (4) maliciously conceal exculpatory evidence from the District Attorney's Office; (5) and maliciously initiate a prosecution against a man for a crime that another person committed after falsifying information in a DEA report and admitting this critical information from a criminal court affidavit.

37. All defendants caused plaintiff to be incarcerated for almost ten months before all charges were dismissed against him.

38. Defendants' actions were malicious and intentional.

39. Defendants' actions violated clearly established constitutional and statutory rights recognized in the Second Circuit.

40. Defendants' actions in arresting plaintiff without probable cause, abusing him while in custody, concealing exculpatory evidence from the DA to cause a prosecution to be initiated, and falsifying information in their DEA reports, harmed defendant immeasurably, and caused a protracted incarceration.

41. Defendants violated plaintiff's 14th Amendment to liberty, 4th Amendment against unlawful seizures, 5th Amendment right against self incrimination (abusing him for refusing to confess), 6th Amendment right to counsel, and 8th Amendment right to be free from cruel and unusual punishment in contravention of 28 U.S.C §1331.

42. Wherefore, plaintiff has suffered severe emotional damage and anguish as a result of defendants' malicious actions.

43. Plaintiff demands trial by jury.

44. Plaintiff seeks $10 million dollars in emotional damages; $10 million dollars in punitive damages, and $100,000 in compensatory damages for lost work and legal fees.

Dated: March 4, 2016

_____
Tamara Harris


## VERIFICATION

TAMARA HARRIS verifies the content of this complaint to be accurate to the best of her knowledge and is signing this verification because her client resides in a county other than the one where she maintains her office.

_____

Tamara Harris