UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOUHAN RIVERA,                                               :
                                                            :
                              Plaintiff,                     :
                                                            :          **OPINION & ORDER**
              -against-                                      :          16-CV-1105 (DLI)(JO)
                                                            :
DEA SPECIAL AGENT DAVID T. SAMILO;                          :
DEA SPECIAL AGENT EDWARD TRACY;                             :
DEA SPECIAL AGENT JOSEPH DOHERTY;                           :
DEA SPECIAL AGENT ROB GARCIA;                               :
SPECIAL AGENT FRANCIS RAU;                                  :
SPECIAL AGENT GERARD RICCIARDI; and                         :
DEA GS KEVIN LARKIN,                                         :
                                                            :
                              Defendants.                    :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, Chief United States District Judge:**

Plaintiff Jouhan Rivera ("Plaintiff") filed a verified complaint against Drug Enforcement

Agency ("DEA") Special Agents David T. Samilo, Edward Tracy, Joseph Doherty, Rob Garcia,

Francis Rau, and Gerard Ricciardi, and DEA Group Supervisor ("GS") Kevin Larkin (each a

"Defendant," and, collectively, "Defendants") alleging violations of Plaintiff's Fourth, Fifth,

Sixth, Eighth, and Fourteenth Amendment rights under *Bivens v. Six Unknown Named Agents*, 403

U.S. 388 (1971) in connection with an October 22, 2013 arrest and subsequent pre-trial detention.

*See generally*, Complaint ("Compl."), Dkt. Entry No. 1. Defendants moved to dismiss the

Complaint pursuant to Rules 12(b)(1), 12(b)(5), 12(b)(6) of the Federal Rules of Civil Procedure

("FRCP"), and, in the alternative, for summary judgment pursuant to FRCP 56. *See generally*,

Defs.' Mem. of Law ("Defs.' Mem."), Dkt. Entry No. 39. Plaintiff opposed Defendants' motion.

*See generally*, Pl.'s Mem. of Law in Opp'n ("Pl.'s Opp'n"), Dkt. Entry No. 44. Defendants filed

a reply in response to Plaintiff's opposition. Defs.' Reply Mem. of Law ("Defs.' Reply"), Dkt.

Entry No. 42. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

This case arises out of an investigation by "Group D-12" of the DEA, which includes the Defendants, and a traffic stop that led to Plaintiff's arrest and detention. Apparently unbeknownst to Plaintiff, the DEA had been surveilling him and his associate Abner Reyes-Ribot ("Reyes-Ribot") throughout the day on October 22, 2013 and for several months before that day. Defs.' 56.1 Stmt., ¶ 4. Plaintiff neither admits nor denies that the DEA was surveilling him, but claims that further discovery is needed to confirm this fact. Pl.'s 56.1 Stmt., ¶ 4. Based on their months-long surveillance, the DEA believes Plaintiff is a high-ranking member of a drug trafficking conspiracy that transported several hundred kilograms of cocaine via "go-fast boats" from Colombia through the Dominican Republic and Puerto Rico to the United States. *See* Defs.' 56.1 Stmt., ¶ 11. Plaintiff disputes that he conspired to traffic cocaine. Pl.'s 56.1 Stmt., ¶ 11.

On October 22, 2013, the DEA surveilled Plaintiff's home in Springfield, Massachusetts. Defs.' 56.1 Stmt., ¶ 14. At 10:30 a.m., the agents observed Plaintiff in his driveway on the phone. *Id.* at ¶ 15. The agents next observed Reyes-Ribot speak with Plaintiff, and then drive a black Mazda from Plaintiff's driveway to a house next door. *Id.* at ¶ 16. Plaintiff and Reyes-Ribot then stood at the rear of the car with the trunk open. *Id.* at ¶ 17. Plaintiff and Reyes-Ribot got in the vehicle and left, with Reyes-Ribot driving, and, between 10:40 a.m. and 11:55 a.m., the DEA

---

[1] The following facts are taken from the Complaint and the parties' respective statements of fact. Pursuant to Local Rule 56.1, the parties have submitted statements of material fact that they believe leave no genuine issue to be tried. *See* Defs.' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1 Stmt."), Dkt. Entry No. 38; Pl.'s Response to Defs.' Local 56.1 Statement ("Pl.'s 56.1 Stmt."), Dkt. Entry No. 40; Defs.' Reply Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' Reply 56.1 Stmt."), Dkt. Entry No. 41. Each numbered paragraph in the movants' statement of material facts is deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the nonmovant's statement. Local Rule 56.1(c). All statements of material fact must be followed by a citation to admissible evidence. Local Rule 56.1(d).

agents observed them stop at four different locations in the Springfield, Massachusetts area. *Id.* at ¶¶ 18-19. At each stop, the agents observed short interactions between Plaintiff and various people, and, at one location, the Mazda was moved to the rear of a building and several people stood around the trunk area of the vehicle for approximately thirty-five minutes. *Id.* at ¶ 20. At approximately 12:27 p.m., the Mazda was observed crossing into Suffield, Connecticut, making a u-turn, and then returning to Springfield. *Id.* at ¶ 21. The Mazda made one more stop before returning to Plaintiff's home. *Id.* at ¶ 22. Plaintiff disputes each of these facts, but provides no facts to contradict Defendants' account. Pl.'s 56.1 Stmt., ¶¶ 14-22.

Defendants Samilo and Tracy were in contact with two Confidential Sources ("CSs") on October 22, 2013, who disclosed that Plaintiff and Reyes-Ribot planned to travel to New York to complete a drug transaction. Defs.' 56.1 Stmt., ¶ 24. Defendants Samilo and Tracy provided the CSs with a recording device, and the CSs met Plaintiff and Reyes-Ribot later that day. *Id.* at ¶ 26. The CSs recorded this meeting while Group D-12 observed, and then provided the recording to the DEA. *Id.* at ¶¶ 25-27. Following the meeting, one of the CSs called Defendants Samilo and Tracy and informed them that he or she believed Plaintiff owned the drugs that were to be sold in New York and that Reyes-Ribot was Plaintiff's employee. *Id.* at ¶¶ 28-29. The CSs informed Defendants Samilo and Tracy that they believed Plaintiff had a large quantity of cocaine in the black Mazda. *Id.* at ¶ 28. Plaintiff disputes that he met with any CSs and was involved with any drug transaction, but he does not provide any factual support that contradicts Plaintiff's statement. Defs.' 56.1 Stmt., ¶¶ 24-29.

In the evening of October 22, 2013, Plaintiff traveled with Reyes-Ribot from Massachusetts to New York City in Reyes-Ribot's black Mazda. Compl., ¶ 7. Reyes-Ribot's car exited the Cross Bronx Expressway and travelled southbound. Defs.' 56.1 Stmt., ¶ 34; Pl.'s 56.1

Stmt., ¶ 34.  The car then proceeded to drive through a red light.  Defs.' 56.1 Stmt., ¶ 36.  After witnessing the vehicle violate New York Vehicle and Traffic law, Defendants initiated a stop of Reyes-Ribot's car.  *Id.* at ¶ 39.  Defendant Garcia informed Reyes-Ribot of the reason for the vehicle stop, ordered Plaintiff and Reyes-Ribot out of the vehicle, and they complied.  *Id.* at ¶¶ 43-44.  Plaintiff disputes that he and Reyes-Ribot were told the reason for the stop, and that it was Defendant Garcia who ordered him out of the vehicle, since he believes it was Defendant Samilo who did so.  Pl.'s 56.1 Stmt., ¶¶ 43-44.  Plaintiff and Reyes-Ribot were then searched for weapons. Defs.' 56.1 Stmt., ¶ 45.  The parties dispute whether consent was given to search Reyes-Ribot's car; Defendants claim consent was given, and Plaintiff and Reyes-Ribot contend that consent was refused.  *Id.* at ¶¶ 46, 48; Pl.'s 56.1 Stmt., ¶¶ 46, 48.  A search of the vehicle revealed a duffel bag in the spare tire well of the trunk, which contained approximately three kilograms of cocaine. Defs.' 56.1 Stmt., ¶ 50.  Defendants claim that neither Plaintiff nor Reyes-Ribot admitted to owning the cocaine, but Plaintiff claims that Reyes-Ribot admitted the drugs were his.  *Id.* at ¶ 52; Pl.'s 56.1 Stmt., ¶ 52.  The parties also dispute whether Plaintiff was placed under arrest before or after the drugs were found in the car.  Defs.' 56.1 Stmt., ¶ 54; Pl.'s 56.1 Stmt., ¶ 54.

Plaintiff alleges that, while he was being handcuffed, Defendant Samilo called him a "motherfucker" in Spanish.  Compl., ¶ 16.  Plaintiff further alleges that he told the Defendants that he had a hand injury, and that the handcuffs were too tight and aggravating that injury.  *Id.* at ¶ 17. Defendants dispute these allegations, and Defendant Samilo swears that he does not speak Spanish. Defs.' 56.1 Stmt., ¶56; Samilo Decl., ¶¶ 41-42.

The parties dispute the facts surrounding Plaintiff's questioning following his arrest. Defendants allege that Plaintiff refused to cooperate.  Defs.' 56.1 Stmt., ¶ 59.  Plaintiff alleges that Defendant Samilo kicked him to induce a confession, and interrogated him regarding who was

calling his phone during questioning.  Pl.'s 56.1 Stmt., ¶ 59.  However, the parties do not dispute that, during processing, Plaintiff told Defendant Samilo that he was on probation.  Defs.' 56.1 Stmt., ¶ 64; Pl.'s 56.1 Stmt., ¶ 64.  The parties dispute whether Plaintiff requested a lawyer while in DEA custody.  Defs.' 56.1 Stmt., ¶ 65; Pl.'s 56.1 Stmt., ¶ 65.

Following Plaintiff's arrest, the DEA consulted with a prosecutor from the United States Attorney's Office,[2] who suggested that the DEA refer the case to the Office of the New York City Special Narcotics Prosecutor ("SNP").  Defs.' 56.1 Stmt., ¶ 68.  On October 23, 2013, Defendant Samilo signed a criminal complaint in which the State of New York charged Plaintiff with criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree.  *Id.* at ¶ 73.

On October 24, 2013, Plaintiff was charged in the District of Massachusetts with violating the terms of his probation for leaving the state without probation's permission.  *Id.* at ¶ 78.  The parties dispute whether bail was set for the violation, but Plaintiff was held at the Metropolitan Detention Center pending his appearance in Massachusetts.  *Id.* at ¶ 79; Pl.'s 56.1 Stmt., ¶ 79.  On December 6, 2013, District Judge Michael Posnor of the District of Massachusetts ordered that Plaintiff be produced by December 18, 2013 for an initial hearing in connection with the probation violation.  Defs.' 56.1 Stmt., ¶ 80.  On or about December 17, 2013, Plaintiff was transferred to federal custody.  *Id.* at ¶ 81.  On April 3, 2014, Plaintiff pled guilty to violating his probation and was sentenced to twenty-four months of supervised release.  *Id.* at ¶ 82.

---

[2]    It is not clear which United States Attorney's Office the DEA consulted with following Plaintiff's arrest.

On May 13, 2014, Plaintiff was transferred to state custody, and a warrant/detainer[3] was issued that day. *Id.* at ¶ 83. On July 2, 2014, the State of New York dismissed the charges pending against Plaintiff. *Id.* at ¶ 87. The parties disagree as to the reason for dismissal. Defendants allege that it was because the SNP wanted to protect the confidentiality and usefulness of its CSs, who would have had to testify before the grand jury in order to prosecute Plaintiff. *Id.* at ¶¶ 85-86. Plaintiff alleges that it is possible, though only discovery would confirm, that SNP did not prosecute because it had evidence exonerating Plaintiff. Pl.'s 56.1 Stmt., ¶¶ 85-86.

## DISCUSSION

### I.    Legal Standard

#### A.    Rule 12(b)(1)

A party may seek to dismiss a case under Rule 12(b)(1) for lack of subject matter jurisdiction. "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *See Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (citing *Sharkey v. Quarantillo*, 541 F.3d 75, 82 (2d Cir. 2008)) (internal quotation marks omitted); *Rene v. Citibank NA*, 32 F. Supp.2d 539, 542 (E.D.N.Y. 1999). "[Lack] of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000); *See also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). If a court

---

3    Although Defendants have included documentation demonstrating that Plaintiff's warrant was lifted, it is unclear which authority issued the warrant and what the charges were.

lacks subject matter jurisdiction, it must dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3); *See also Lussier*, 211 F.3d at 700-01.

### B.    Rule 12(b)(5)

A plaintiff also bears the burden of proving proper service of process and establishing that the court has personal jurisdiction over the defendants.  *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order) ("On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient.").  Rule 4(i) sets out the requirements of service for federal employees:  where an employee is sued in his official capacity, Rule 4(i)(2) requires a party to "serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the . . . employee," and, where an employee is sued in his personal capacity, Rule 4(i)(3) requires a party to serve the United States and also serve the employee under Rules 4(e), (f), or (g).  Fed. R. Civ. P. 4(i)(2), (3).  Rules 4(f) and 4(g) do not apply here.  Rule 4(e) permits service on an individual by (1) following state law; or (2) by personal service, by leaving a copy at the individual's dwelling with an individual of suitable age and discretion who resides there, or by service upon "an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e).

Under New York law, service is proper if made in one of three ways: by (1) personal service; (2) service upon "a person of suitable age and discretion at the actual place of business, dwelling place or place of abode" and mailing a copy to either the last known residence or actual place of business; or (3) service upon "the agent for service of the person to be served."  N.Y. C.P.L.R. § 308(1)-(3).  Compliance with state law service requirements satisfies Rule 4.  Fed. R. Civ. P. 4(e)(1); *See also Dominguez v. B S Supermarket, Inc.*, 2016 WL 7647577, at *3 (E.D.N.Y. Dec. 1, 2016), *report and recommendation adopted by* 2017 WL 52582 (E.D.N.Y. Jan. 4, 2017).

### C.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (citations and internal quotation marks omitted). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). *Iqbal* requires more than "'a formulaic recitation of the elements of a cause of action.'" *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555). Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). On a motion to dismiss, the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999).

### D.    Rule 56

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citation and internal quotation marks omitted). A fact is "material" if its resolution "might affect the outcome of the suit under governing law." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. (quoting *Anderson*, 447 U.S. at 248). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (citing Fed. R. Civ. Proc. 56(e)). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, . . . or upon the mere allegations or denials of the [nonmoving] party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotation marks omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## II.    Analysis

### A.    Subject Matter Jurisdiction Over Official Capacity Claims

Defendants contend that the Court lacks subject matter jurisdiction over Plaintiff's claims against Defendants in their official capacities because Defendants "are absolutely immune from suit in their official capacities."  Defs.' Mem. at 2-3.  In opposition, Plaintiff argues that the Defendants are not immune because "[t]he United States is not a named party," and "suing the individual [DEA] [a]gents in their official capacit[ies]" is not the same as naming the United States as a defendant.  Pl.'s Opp'n at 1-2.[4]

"Sovereign immunity is jurisdictional in nature."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  "Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent."  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  "[A]n action against . . . federal officers in their official capacities is essentially a suit against the United States."  *Id.*; *See also Haywood v. Alcantara*, 103 F. App'x 443, 444 (2d Cir. 2004) ("[S]overeign immunity shield[s] . . . [g]overnment defendants, named in their official capacities, from any action for money damages.").  Therefore, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its [officers acting in their official capacities] from suit."  *See Meyer*, 510 U.S. at 475; *See also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999) ("The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction.").

---

[4]    Plaintiff's memorandum of law in opposition to Defendants' motion is not paginated.  As such, the page numbers used herein are those assigned by the ECF system.

10

Here, Plaintiff brings claims against the Defendants in "their individual and official capacities." Compl., ¶ 2. First, since, contrary to Plaintiff's contention, suits against federal officers in their official capacities are "essentially . . . suit[s] against the United States," *Robinson*, 21 F.3d at 510, it does not matter that the United States is not a named party. Second, Plaintiff does not contend that the United States has waived immunity. Pl.'s Opp'n at 2 ("[P]laintiff . . . does not dispute . . . that the *United States* has not waived sovereign immunity.") (emphasis original). Accordingly, to the extent Plaintiff brings claims against the Defendants in their official capacities, those claims are dismissed for lack of subject matter jurisdiction. *Robinson*, 21 F.3d at 511 (affirming dismissal of official capacity claims for lack of subject matter jurisdiction).

## B. Insufficient Service of Process

Defendants next contend that dismissal is warranted because Plaintiff failed to serve Defendants properly. Specifically, Defendants argue that: (1) it was improper for Plaintiff to leave the summons and Complaint with an individual who was not Defendants' authorized agent[5] (Defs.' Mem. at 4), and (2) service upon a person of "suitable age and discretion" was inappropriate since service was made at the Defendants' place of business, not Defendants' respective dwellings (Defs.' Reply at 3). Plaintiff argues that service was proper in all respects. Pl.'s Opp'n at 3-4.

While Defendants argue that service was made upon Defendants' purported agent, Ms. Anita Brown, the affidavits of service indicate that Ms. Brown was served as a "person of suitable age and discretion" at Defendants' "actual place of business," not as Defendants' authorized agent.

---

[5]     Defendants also argue that Plaintiff failed to mail a copy of the summons and Complaint to the Defendants. Defs.' Mem. at 5. However, Defendants withdrew this argument since, as Plaintiff points out, Plaintiff's affidavit of service indicates that copies also were mailed to the Defendants. *See* Affidavit of Service, Dkt. Entry No. 8 ("Aff. of Serv."); Defs.' Reply at 2-3.

*See* Aff. of Serv.; Pl.'s Opp'n at 3.[6]  Therefore, the Court must determine whether service upon a person of suitable age and discretion was appropriate here.

Rule 4 makes clear that service in accordance with state law satisfies the requirements of the federal rules.  Fed. R. Civ. P. 4(e)(1) ("[A]n individual . . . may be served . . . by following state law.").  Since the New York Civil Practice Law and Rules ("CPLR") permit service upon a person of suitable age and discretion at a defendant's actual place of business, and Defendants here do not dispute either that Ms. Brown was of suitable age and discretion, or that the place of service was at their actual place of business, the Court finds that Defendants were properly served.  *See* N.Y. C.P.L.R. § 308(2).  Defendants' motion to dismiss pursuant to Rule 12(b)(5) is denied.

### C.    *Bivens* Claims

Defendants contend that, aside from allegations about Samilo, the Complaint only alleges that the "Defendants" violated Plaintiff's constitutional rights, which fails to satisfy the pleading requirements for *Bivens* claims.  Defs.' Mem. at 12-13.  In opposition, Plaintiff argues that the Complaint satisfies the requirements of Rule 8.  *See* Pl.'s Opp'n at 17-20.

In a *Bivens* action, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676. "[V]icarious liability is inapplicable to *Bivens* and § 1983 suits," and, therefore, "each Government official . . . is only liable for his or her own misconduct."  *Id.* at 676-77; *Elufe v. Aylward*, 2011 WL 477685, at *8 (E.D.N.Y. Feb. 4, 2011) (granting summary judgment "based on the lack of any

---

[6]        The Court declines to consider the unsworn testimony of Michael Delcore, which was not submitted under penalty of perjury.  *See* Declaration of Michael Delcore ("Delcore Decl."), Ex. D to Pl.'s Opp'n.  "Rule 56 of the Federal Rules of Civil Procedure permits courts to consider assertions in an unsworn declaration or statement at the summary judgment stage, but only if the declarant affirms, under the penalty of perjury, that the contents of the unsworn statement are true."  *Waddlington v. City of New York*, 971 F. Supp.2d 286, 292 (E.D.N.Y. 2013) ("[U]nsworn statements are generally not considered as evidence in opposition to summary judgment.") (citations omitted).

evidence that [the officer defendants] were personally involved in the use of force"). "'It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'"  *Moschetto v. Nassau Cnty. Sheriff*, 2011 WL 2457927, at *3 (E.D.N.Y. June 16, 2011) (citing *Dove v. Fordham Univ.*, 56 F. Supp.2d 330, 335 (S.D.N.Y. 1999)).

Here, the Complaint fails to include any specific allegations as to any Defendants other than Samilo.  Indeed, many of the paragraphs in the Complaint to which Plaintiff directs the Court in his opposition include allegations against all Defendants, rather than allegations specific to each Defendant's role in the alleged constitutional violations.  *See* Pl.'s Opp'n at 17; Compl., ¶ 8 ("[A]ll of the above defendants . . . began to follow the Black Mazda."); *Id.* at ¶ 16 ("Samilo and all other defendant's [*sic*] lied about their unlawful arrest in their DEA report."); *Id.* at ¶ 32 ("[A]ll of the aforementioned defendants tried to conceal the exculpatory statement made by Reyes-Ribot."); *See also Id.* at ¶ 28 ("[D]efendants arrested plaintiff."); *Id.* at ¶ 29 ("The defendants insisted on charging plaintiff.").  In other instances, Plaintiff alleges by name that all Defendants are responsible for certain conduct.  *See, e.g.*, *Id.* at ¶ 17 ("[Plaintiff] advised Defendant and all other named defendants (Larkin, Tracy, Doherty, Garcia, Rau, and Ricciardi) that he had sustained a hand injury.").  The Complaint also includes generic allegations regarding actions by "the police" that do not allege any actions by any of the Defendants.  *See, e.g.*, *Id.* at ¶ 22 ("Without consent, the police then began a protracted search of Reyes-Ribot's vehicle."); *Id.* at ¶ 23 ("The police allegedly discovered cocaine within the spare tire well.").

Supreme Court precedent makes clear that more is required where a Plaintiff seeks to hold government officials responsible for constitutional torts.  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Plaintiff's citations to out-of-circuit cases articulating the pleading standard under Rule 8 (*See* Pl.'s Opp'n at 18-20) do not demonstrate otherwise.

Plaintiff's conclusory, non-specific allegations, that do not allege that specific Defendants (besides Defendant Samilo) violated Plaintiff's constitutional rights, are plainly insufficient. *See Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987) (dismissing claims that did not allege "any personal involvement" by defendant), *cert. denied* 489 U.S. 1065 (1989); *Carbajal v. Cnty. of Nassau*, 271 F. Supp.2d 415, 421 (E.D.N.Y. 2003) ("[T]here are no factual allegations against [defendant]; he appears only in the caption of the complaint. [...] Accordingly, the complaint fails to allege sufficient personal involvement by [defendant]."). Accordingly, Plaintiff's claims against Defendants Tracy, Doherty, Garcia, Rau, Ricciardi, and Larkin in their individual capacities are dismissed.

### D.    Constitutional Violations

Since Plaintiff only alleges that Defendant Samilo's individual actions violated his constitutional rights, the Court must assess whether Plaintiff has pled sufficient facts to hold Defendant Samilo liable for violating Plaintiff's Fourth, Fifth, and Sixth Amendment rights,[7] and, alternatively, whether there exists any disputed issue of material fact that would preclude awarding Defendants summary judgment. The Court will address each of Plaintiff's claims in turn.

### 1.    Fourth Amendment Claims

Plaintiff alleges that the Defendants violated his Fourth Amendment rights because: there was no probable cause for: (1) the vehicle stop; (2) the vehicle search; (3) a search of Plaintiff's

---

[7]    The Complaint also asserts claims under the Eighth and Fourteenth Amendment. *See* Compl., ¶ 41. However, Plaintiff has withdrawn these claims. *See* Pl.'s Opp'n at 17.

person; or (3) Plaintiff's arrest, and that Defendant Samilo used excessive force in the arrest and subsequent interrogation of Plaintiff. *See generally*, Compl. Specifically, with respect to the excessive force claims, Plaintiff alleges that Defendant Samilo called him a "motherfucker" in Spanish; "threaten[ed] to take [Plaintiff] out of the car physically"; "tightened the handcuffs . . . until plaintiff complained of excruciating pain"; refused to loosen the handcuffs, despite Plaintiff's pleas that he was in pain; and "kicked plaintiff extremely hard in his leg and began to insult and curse at him, calling him derogatory names like 'stupid motherfucker.'" *See* Compl., ¶¶ 16, 18, 31, 36. Defendants argue that probable cause existed for the vehicle stop and subsequent searches, and, with respect to the excessive force claims: that (1) Plaintiff's allegations fail because Plaintiff does not use the words "excessive force" in the Complaint, and (2) Defendants' actions resulted in, at most, *de minimus* injuries, which are not actionable. Defs.' Mem. at 7-8. Defendants further argue that they are entitled to qualified immunity from Plaintiff's claims because Defendants' actions were reasonable. *Id.* at 24-26. In opposition, Plaintiff argues that his injuries were not *de minimus* (Pl.'s Opp'n at 6), nor are Defendants entitled to qualified immunity as their conduct was not objectively reasonable (*Id.* at 8-10).

### a.    Vehicle Stop

The material facts surrounding the vehicle stop are not in dispute. The Complaint alleges that "Plaintiff and the driver of the car in which he was riding had not engaged in any misconduct or traffic infraction when . . . defendants elected to . . . stop their vehicle." Compl., ¶ 10. In support of their motion for summary judgment, Defendants attach copies of the complaints filed in the Southern District of New York, sworn testimony by Plaintiff on two separate occasions, as well as DEA reports, all indicating that the driver of the vehicle, Abner Reyes-Ribot, failed to stop at a red light while being followed by the Defendants. *See* Declaration of Sean P. Greene, Dkt. Entry

No. 37-1, at Exs. 2-5; Declaration of David T. Samilo ("Samilo Decl."), Dkt. Entry No. 37-10, ¶ 33; Report of Investigation ("ROI") dated Oct. 24, 2013, Ex. 5 to Samilo Decl., ¶ 4.  Neither Plaintiff, nor Reyes-Ribot, dispute these facts in their affidavits submitted in opposition to Defendants' motion.  *See* Affidavit of Abner Reyes-Ribot ("Reyes-Ribot Aff."), Ex. C to Pl.'s Opp'n; Affidavit of Jouhan Rivera ("Rivera Aff."), Ex. B to Pl.'s Opp'n.  Though Plaintiff's 56.1 statement purports to dispute that the vehicle ran the red light (*See* Pl.'s 56.1 Stmt., ¶ 36), Plaintiff offers no facts in support of its dispute, and Plaintiff's contention is clearly refuted by his prior statements and filings.

"[T]he Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity."  *United States v. Wilson*, 699 F.3d 235, 242 (2d Cir. 2012) (citation and internal quotation marks omitted); *See also Briukhan v. City of New York*, 147 F. Supp.3d 56, 60 (E.D.N.Y. 2015) (citing *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009)) ("A traffic stop comports with the Fourth Amendment so long as police had probable cause to believe that a traffic violation occurred.").  Probable cause exists where police officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (citations and internal quotation marks omitted).

Here, since Defendants witnessed the vehicle run the red light in violation of the New York vehicle and traffic laws (Samilo Aff., ¶ 33), probable cause existed to stop the vehicle.  While the analysis could stop there, in addition, Defendants had probable cause to stop the vehicle based on the information obtained from the CSs and the DEA's surveillance.  Defendants' 56.1 statement

details how two CSs: (1) met with Plaintiff, who discussed with them his potential travel to New York; (2) recorded their interaction with Plaintiff; (3) provided the recording to the DEA; and (4) informed Defendant Samilo that they believed Plaintiff had "a large quantity of cocaine in his car, a black Mazda." *See* Defs.' 56.1 Stmt., ¶¶ 24-28.  Plaintiff purports to dispute these facts by referencing his affidavit, which provides no facts that rebut Defendants' account, and merely states that the Defendants are not being truthful.  *See* Pl.'s 56.1 Stmt., ¶¶ 24-28; *See generally*, Rivera Aff.  On summary judgment, the nonmoving party must do more than "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, . . . or upon the mere allegations or denials of the [nonmoving] party's pleading." *Ying Jing Gan*, 996 F.2d at 532-533 (citations and internal quotation marks omitted).  Plaintiff's self-serving statements fail to meet this requirement.  Accordingly, Defendants' motion for summary judgment as to the constitutionality of the vehicle stop is granted.

### b.    Search of the Vehicle

The parties dispute whether consent ever was obtained to search the vehicle that was owned and operated by Reyes-Ribot.  *See* Compl., ¶ 6 (Plaintiff travelled to New York in "Mr. Reyes-Ribot's vehicle, a [b]lack Mazda.").  Defendants contend that Reyes-Ribot consented to a search.  Defs.' 56.1 Stmt., ¶ 46.  Plaintiff argues, based on Reyes-Ribot's sworn testimony, that consent was never given by Plaintiff or Reyes-Ribot.  Pl.'s 56.1 Stmt., ¶ 46; Reyes-Ribot Aff., ¶ 4.  However, "[i]t is well settled that non-owner passengers cannot bring a Fourth Amendment challenge to a search of the interior of a vehicle because they do not possess a reasonable expectation of privacy in a vehicle that is not their own." *United States v. Bulluck*, 2010 WL 1948591, at *11 (S.D.N.Y. May 13, 2010) (citing *Rakas v. Illinois*, 439 U.S. 128, 148 (1978)).

17

Accordingly, Plaintiff's claim as to the constitutionality of the search of Reyes-Ribot's vehicle is dismissed.

### c.      Plaintiff's Arrest and Search

As an initial matter, the Complaint does not allege which Defendant arrested or searched Plaintiff.  As discussed above, *Bivens* claims require a plaintiff to "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Since Plaintiff does not allege which Defendant effectuated his allegedly "false arrest" or performed an unconstitutional search, Plaintiff's claim should be dismissed.

Even assuming *arguendo* that Plaintiff's allegations state a claim against Defendants Doherty and Garcia, who made the arrest and performed the subsequent search (*See* Defs.' 56.1 Stmt., ¶¶ 45, 54), the Court finds that summary judgment is warranted.

First, with lawful vehicle stops, passengers have no Fourth Amendment right to remain in the vehicle.  *See Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000) (citing *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997) (additional citations omitted)) ("[I]f a stop is lawful, passengers and drivers have no Fourth Amendment interest in not being ordered out of the stopped vehicle."). "[A] lawful custodial arrest permits a police officer to search the arrestee's person." *Evans v. Solomon*, 681 F. Supp.2d 233, 248 (E.D.N.Y. 2010) (citing *Arizona v. Gant*, 556 U.S. 332, 339 (2009)) (internal quotation marks omitted).  The parties do not dispute that, after being stopped, Plaintiff was ordered out of the vehicle.  Defs.' 56.1 Stmt., ¶ 44; Pl.'s 56.1 Stmt., ¶ 44.  Since, as discussed above, the vehicle stop was lawful, to the extent Plaintiff contends that his being ordered out of the vehicle violated his Fourth Amendment rights, Plaintiff is incorrect.

Second, Defendants also had probable cause to arrest Plaintiff prior to discovering the drugs in Reyes-Ribot's trunk.  As discussed above, Defendants' 56.1 Statement details how the

DEA surveilled Plaintiff throughout the day of the stop. The DEA observed Plaintiff making several stops in Massachusetts and mulling about the open trunk of Reyes-Ribot's Mazda. Defs.' 56.1 Stmt., ¶¶ 14-22. Two CSs also informed Defendants Samilo and Tracy that they believed Plaintiff had "a large quantity of cocaine in his car, a black Mazda," and that he was possibly travelling to New York to make a drug transaction. *Id.* at ¶¶ 24-28. The CSs' conversations with Plaintiff were recorded and shared with the DEA. *Id.* at ¶ 25. Plaintiff fails to rebut these facts with anything more than unsupported denials of Defendants' truthfulness. Pl.'s 56.1 Stmt., ¶¶ 14-22, 24-28. Accordingly, the Court finds that given the information the agents possessed by virtue of their surveillance of Plaintiff and Plaintiff's interaction with the CSs, Defendants had probable cause to arrest Plaintiff, even if, as Plaintiff alleges, the arrest occurred prior to the agents finding the narcotics in Reyes-Ribot's vehicle.

Third, the search of Plaintiff's person following his arrest was not unconstitutional.[8] The parties do not dispute that Plaintiff was searched following the stop and his arrest. *See* Defs.' 56.1 Stmt., ¶ 45; Pl.'s 56.1 Stmt., ¶ 45. Where, as here, a lawful vehicle stop has been made, and there is probable cause to arrest, there is also probable cause to conduct a search of the arrestee. *Evans*, 681 F. Supp.2d at 248 ("[O]nce [defendant] acquired the authority to arrest [p]laintiff, he was permitted to conduct a full search incident to arrest."). Accordingly, Defendants are also entitled

---

[8] In addition to a search following his arrest, Plaintiff's 56.1 statement also references a "strip search." Pl.'s 56.1 Stmt., ¶ 45. Plaintiff concedes it was not Defendant Samilo who strip searched him, but does not identify who conducted the strip search. *See* Tr. of Dec. 16, 2014 Deposition ("Dec. 16 Tr."), Ex. 2 to Green Decl., at 28:4-8 ("Q: When they took your belongings, did they strip search you, did they take off all your clothes? A: Yes. It wasn't him, it was another person from there."). Accordingly, to the extent Plaintiff alleges he was strip searched in violation of his constitutional rights, Plaintiff's allegations are insufficient because they do not identify who performed the search. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Accordingly, any claim as to an alleged strip search is dismissed.

to summary judgment as to Plaintiff's being ordered out of the vehicle, his arrest, and a subsequent search of his person.

### d.      Excessive Force Claims

As an initial matter, Defendants argue that Plaintiff's excessive force claims fail because he has failed to use the words "excessive force" in his Complaint.  Defs.' Mem. at 8.  Generally, a complaint need not invoke particular phrases or words to be sufficient at the pleading stage.  *See, e.g.*, *Vazquez v. Combs*, 2004 WL 2404224, at *3 (S.D.N.Y. Oct. 22, 2004) ("To be deemed adequate at the pleading stage, a complaint need not use particular words.").  Though Plaintiff does not use the phrase "excessive force" in his Complaint, it is clear that Plaintiff, in essence, is alleging that the manner in which he was handcuffed and kicked constituted excessive force.  Accordingly, Defendants' argument that the excessive force claims should be dismissed because Plaintiff has not labeled them "excessive force" claims, is denied as without merit.

### i.      Handcuffing Claim

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" in arresting a suspect.  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  "[R]outine handcuffing at the time of arrest, absent something more, cannot constitute a cognizable excessive force claim."  *Jouthe v. City of New York*, 2009 WL 701110, at *14 (E.D.N.Y. Mar. 10, 2009) (citing *Gil v. Cnty. of Suffolk*, 590 F. Supp.2d 360, 371 (E.D.N.Y. 2008)).  However, handcuffing can give rise to an excessive force claim where handcuffing results in more than a *de minimus* injury.  *See Id.* (citing *Gonzalez v. City of New York*, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000)).  Handcuffing also can constitute excessive force where the officer is aware of a preexisting condition and the arrestee is cooperative.  *See, e.g.*, *Beckles v. City of New York*, 492 F. App'x 181, 182 (2d Cir. 2012) (summary order)

("[T]here is a general consensus among courts . . . that otherwise reasonable force used in handcuffing a suspect may be unreasonable when used against a suspect whom the officer knows to be injured . . . ." (citations omitted)); *Crooks v. Hamilton Cnty.*, 458 F. App'x 548, 550 (6th Cir. 2012) (request for front handcuffing because of medical condition created a triable issue of fact); *Fisher v. City of Las Cruces*, 584 F.3d 888, 899-902 (10th Cir. 2009) (rear handcuffing despite gunshot wound and injury to the bicep precluded summary judgment); *Barratt v. Joie*, 2002 WL 335014, at *7 (S.D.N.Y. Mar. 4, 2002) ("[P]laintiff has not alleged any special factors, such as a medical injury or pre-existing condition exacerbated by the handcuffing, that would support a conclusion that his handcuffing involved unreasonable or excessive force."); *Pritzker v. City of Hudson*, 26 F. Supp.2d 433, 444 (N.D.N.Y. 1998) (denying qualified immunity where cooperative arrestee advised officer of pre-existing injury prior to handcuffing).

Courts analyzing the reasonableness of handcuffing do so cognizant of "the minimal amount of force necessary to maintain custody of [the arrestee]." *Felmine v. City of New York*, 2011 WL 4543268, at *19 (E.D.N.Y. Sept. 29, 2011) (citation and internal quotation marks omitted). "[I]n evaluating the reasonableness of handcuffing, courts typically consider evidence that: (1) the handcuffs were unreasonably tight; (2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and (3) the degree of injury to the [plaintiff's] wrists." *Lloyd v. City of New York*, 246 F. Supp.3d 704, 724 (S.D.N.Y. Mar. 31, 2017) (citation and internal quotation marks omitted).

Here, there is a genuine dispute of material fact that precludes summary judgment. Defendant Samilo claims he never tightened Plaintiff's handcuffs (Samilo Aff., ¶ 42 ("I never made any offensive contact with plaintiff.")) or heard any complaints of wrist pain (*Id.* at ¶ 43 ("At no time while in DEA custody did plaintiff ever complain of any injury to his wrist or wrist pain.").

21

However, Plaintiff's affidavit indicates that the handcuffing "physically injured [his] hand." Rivera Aff., ¶ 29. During Plaintiff's December 16, 2014 deposition, Plaintiff testified that he "told [the officer] I had that hand injured, then he squeezed [the handcuffs] even more, [the officer] tightened [the handcuffs] even more . . . ." Dec. 16 Tr., at 20:14-23. According to Plaintiff, he also told the officers during handcuffing that he needed a brace for his injured hand, which was in Reyes-Ribot's car, and they ignored him. *Id.* at 20:25-21:20. Plaintiff's affidavit further states that, as a result of his injuries, he sought "medical intervention in custody and outside of custody." Rivera Aff., ¶ 29. Reyes-Ribot's affidavit supports Plaintiff's account in that Reyes-Ribot states he witnessed the DEA agents "get very rough with [Plaintiff] and ignore his pleas to stop hurting his hand during the handcuffing stage." Reyes-Ribot Aff., ¶ 5.

Plaintiff did not submit any medical records to substantiate his hand injuries. However, Plaintiff's prior testimony, which was submitted by Defendants in support of their motion, sheds some light on the extent of Plaintiff's wrist injuries. Plaintiff testified during a December 16, 2014 New York General Municipal Law § 50-h hearing that, during his first six days of confinement, he was taken to the hospital twice for his hand injuries. Dec. 16 Tr., at 36:8-18. He also testified that, during this period of custody he received pills for the pain and an x-ray was performed. *Id.* at 36:19-25. Plaintiff further testified that, between October 28 and December 17, 2013, he saw doctors two more times, underwent physical therapy while in custody, and continued taking medication for pain and swelling in his hands. *Id.* at 49:7-19. According to Plaintiff, the pain and swelling continued after his detention. *Id.* at 75:3-9. Since the parties dispute whether: (1) Plaintiff complained that the handcuffs were too tight, (2) Defendant Samilo further tightened the handcuffs, and (3) Plaintiff informed the officers of his preexisting hand injuries, and Plaintiff's testimony and affidavit indicate that Plaintiff suffered more than *de minimus* injuries as a result of

being handcuffed, as evidenced by him seeing multiple doctors, undergoing physical therapy, and taking medication for pain, summary judgment is inappropriate.

Defendant Samilo argues that even if his actions violated Plaintiff's constitutional rights, qualified immunity applies. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tracy*, 623 F.3d at 95-96 (internal quotation marks and citations omitted). Where a defendant raises the affirmative defense of qualified immunity, the court must first assess whether "the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right." *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007) (citation and internal quotation marks omitted). If there is no violation of a constitutional right, "'there is no necessity for further inquiries,' . . . and the officer is entitled to summary judgment." *Id.* (citation omitted). If the court finds a constitutional violation, it then determines whether the right was clearly established at the time of the alleged violation. *Tracy*, 623 F.3d at 96 (citing *Gilles*, 511 F.3d at 243-44).

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Kerman v. City of New York*, 261 F.3d 229, 238-39 (1989) (internal quotation marks omitted) (citing *Graham*, 490 U.S. at 395). Determining reasonableness under the Fourth Amendment "'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (citing *Graham*, 490 U.S. at 396). In balancing these interests, courts weigh at least three factors: "(1) the nature and severity of the crime leading to

23

arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 396 (additional citations omitted)).

To be entitled to summary judgment on the ground of qualified immunity, a defendant "must show that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001) (citation omitted). "Because whether force is excessive turns on its reasonableness, . . . '[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.'" *Mills v. Fenger*, 216 F. App'x 7, 8-9 (2d Cir. 2006) (citation omitted).

The reasonableness factors decidedly weigh in Plaintiff's favor. Defendants have not put forth any evidence suggesting that Plaintiff was resisting arrest or attempting to evade arrest. Defendants also have not put forth any evidence suggesting that Plaintiff posed an immediate threat to the safety of the officers or public. Indeed, Plaintiff already was handcuffed when Defendant Samilo allegedly tightened the handcuffs further, and he was in DEA custody when he allegedly was kicked. Furthermore, as discussed above, the parties dispute whether Plaintiff informed Defendant Samilo about his hand injuries and whether Plaintiff complained that the handcuffs were too tight. The Court cannot find, as a matter of law, and viewing the facts in the light most favorable to Plaintiff, that Defendant Samilo's actions in connection with handcuffing Plaintiff were objectively reasonable. Accordingly, Defendants' motion for summary judgment as to Plaintiff's handcuffing claim is denied.

### ii.      Obscenities Claim

While Plaintiff claims that Defendant Samilo used vulgar language during his arrest and detention, calling him a "motherfucker" in Spanish during the vehicle stop (Compl., ¶ 16) and a "stupid motherfucker" during his interrogation (*Id.* at ¶ 31), facts which Defendant Samilo disputes (Samilo Decl., ¶ 41), "verbal abuse, on its own, is not actionable." *Wims v. New York City Police Dep't*, 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011) (citing *Miro v. City of New York*, 2002 WL 1163580, at *5 (S.D.N.Y. June 3, 2002) ("[A]n arresting officer's use of racial epithets does not constitute a basis for a § 1983 claim.")). Accordingly, Plaintiff's claim as to the use of vulgar language is dismissed.

### iii.      Kick Claim

The Complaint also alleges that Defendant Samilo kicked him during an interrogation while he was in custody. Compl., ¶ 31. Allegations of excessive force while in custody are governed by the Fourteenth Amendment's Due Process Clause. *See United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *Sulkowska v. City of New York*, 2001 WL 62810, at *11 (S.D.N.Y. Jan. 24, 2001) ("[P]urported physical abuse . . . while in custody . . . reflect[s] an alleged deprivation of plaintiff's Fourteenth Amendment rights, which protects pretrial detainees from punishment without due process."). Since Plaintiff has withdrawn his Fourteenth Amendment claims, the Court does not address this claim. Pl.'s Opp'n at 17 ("Plaintiff withdraws his claims under the . . . 14th Amendment.").

### 2.      Fifth Amendment Claim

Plaintiff alleges that Defendant Samilo "us[ed] illegal, abusive, and violent interrogation tactics" and "refused to respect plaintiff's 5th Amendment right to remain silent." Compl., ¶¶ 30-31. Defendants contend that the Complaint should be dismissed because it fails to identify any

incriminating statements made by Plaintiff, nor does it allege that any incriminating statements were subsequently used against Plaintiff in a criminal proceeding; both of which are requirements under the Fifth Amendment.  Defs.' Mem. at 8-9.  In response, Plaintiff claims that his statements that he was on probation were incriminating, and that those statements were used against him in a subsequent probation revocation hearing in Massachusetts.  Pl.'s Opp'n at 10-12.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend V.  "The privilege permits a person to refuse to answer questions, in formal or informal proceedings, where the answers might be used to incriminate him in future criminal proceedings."  *United States v. Ramos*, 685 F.3d 120, 126 (2d Cir. 2012) (citing *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)).  The privilege is "not self-executing," meaning that an individual must invoke the privilege's protections.  *Id.* at 127 (citing *Murphy*, 465 U.S. at 425 (additional citation omitted)).

Setting aside whether Plaintiff invoked his Fifth Amendment right to remain silent, there is no evidence that Plaintiff's statements were compelled.  Plaintiff does not allege that Defendant Samilo asked him about his probation status.  The record indicates that, in fact, Plaintiff volunteered to Defendant Samilo that he was on probation.  *See* Defs.' 56.1 Stmt., ¶ 64 ("During processing, plaintiff told SA Samilo that plaintiff was on federal probation."); Pl.'s 56.1 Stmt., ¶ 64 ("Plaintiff does not dispute this."); *See also* Pl.'s Opp'n at 10 ("SA Samilo asked who was calling [Plaintiff].  […]  [Plaintiff] explained that he was simply taking a ride with a friend and knew nothing further; and that if he explained this to his Probation Officer everything would be fine.").  Since the Fifth Amendment only protects "compelled" statements, Plaintiff fails to plead a Fifth Amendment claim because his statements were voluntarily made.  *See United States v. Greer*, 631 F.3d 608, 612 (2d Cir. 2011) ("[T]o qualify for Fifth Amendment protection, a

communication must be . . . compelled."); *Dorst v. Coombe*, 1996 WL 733072, at *6 (E.D.N.Y. Dec. 11, 1996) (citing *United States v. Washington*, 431 U.S. 181, 187 (1977) ("Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions.")).

Furthermore, the Fifth Amendment requires that the incriminating statements were used subsequently against the individual in "criminal proceedings." *Ramos*, 685 F.3d at 126 (citing *Murphy*, 465 U.S. at 426). Here, Plaintiff alleges that his statements were used in a subsequent probation revocation proceeding in the District Court for the District of Massachusetts. Pl.'s Opp'n at 10-11. However, the Supreme Court has held that "a revocation proceeding . . . is not a criminal proceeding." *Murphy*, 465 U.S. at 435 n.7. Therefore, Plaintiff's Fifth Amendment claim fails for the additional reason that he has not alleged that his statements were used against him in a subsequent criminal proceeding. As Defendants point out, it is the fact that Plaintiff was without the state of Massachusetts that violated his terms of probation, not any statement he made to Defendants. Accordingly, Defendants are entitled to summary judgment on Plaintiff's Fifth Amendment claim.

### 3.    Sixth Amendment Claim

The Complaint alleges that, During Defendant Samilo's interrogation of Plaintiff, Plaintiff requested to speak to a lawyer; Defendant Samilo ignored the request, and the questioning continued. Compl., ¶ 31. The Complaint further alleges that the Defendants "[had] the Manhattan DA prosecute a case against plaintiff . . . all the while knowing . . . that [Defendant] Samilo had

used illegal and violent methods to induce a confession from a suspect who exercised his 5th amendment Miranda rights and 6th amendment right to counsel." *Id.* at ¶ 32.

Defendants contend that the Complaint fails to state a Sixth Amendment claim because: (1) Plaintiff did not make any incriminating statements, and (2) even if he did, Plaintiff's Sixth Amendment right to counsel had not attached at the time of questioning since no decision had been made to prosecute Plaintiff. Defs.' Mem. at 9-10. In opposition, Plaintiff argues that his right to counsel attached upon his request for a lawyer. Pl.'s Opp'n at 13. Plaintiff further argues that summary judgment is not appropriate because only through discovery can the parties know whether the decision to prosecute Plaintiff preceded Plaintiff's request for counsel and whether Plaintiff requested a lawyer. *Id.* at 14.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right is limited in that "it does not attach until a prosecution is commenced." *United States v. Reed*, 756 F.3d 184, 187 (2d Cir. 2014) (internal quotation marks omitted) (citing *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 198 (2008)). A prosecution is commenced "at or after the initiation of adversary judicial criminal proceedings—whether by way of indictment or information." *United States v. Mills*, 412 F.3d 325, 328 (2d Cir. 2005) (citing *McNeil v. Wisconsin*, 510 U.S. 171, 175 (1991)).

Here, the Court has already found that Plaintiff did not make any incriminating statements. *See supra*, Section II.D.2. In addition, no adversarial proceedings had been initiated against Plaintiff prior to his alleged questioning and alleged request for an attorney. Crediting Plaintiff's less than clear allegations in the Complaint, Defendant Samilo first questioned Plaintiff (Compl., ¶ 30), Plaintiff requested an attorney (*Id.* at ¶ 31), and then Defendants sought to have the

Manhattan District Attorney initiate a prosecution (*Id.* at ¶ 32).  Plaintiff's affidavit does not add to, or contradict these allegations, nor does Plaintiff allege that he was formally charged before being questioned.  Since no charges had been filed against Plaintiff prior to Defendant Samilo's questioning, Plaintiff's right to counsel had not yet attached.  *See King v. Phillips*, 2009 WL 891763, at *3 (E.D.N.Y. Mar. 31, 2009) (no Sixth Amendment right in "case in which adversarial process has not been initiated"); *See also Texas v. Cobb*, 532 U.S. 162, 172-73 (2001) ("[T]he Sixth Amendment right to counsel attaches only to charged offenses."); *United States v. Richardson*, 837 F. Supp. 570, 575 (S.D.N.Y. 1993) ("I conclude that because defendant had not yet been indicted or arraigned on the federal offenses, defendant's right to counsel had not attached . . . ."); *Orlando v. Nassau Cnty. D.A. Office*, 246 F. Supp.3d 569, 577 (E.D.N.Y. 2017) ("[D]efendant did not have a right to have counsel present for questioning about a murder for which he had not yet been charged.").  Accordingly, Plaintiff's Sixth Amendment claims are dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion is granted in part and denied in part.  Summary judgment is denied only as to the alleged use of excessive force surrounding Plaintiff's handcuffing.  All other claims are dismissed.

SO ORDERED.

Dated: Brooklyn, New York                                           /s/
March 30, 2018                                           DORA L. IRIZARRY
                                                          Chief Judge