UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOUHAN RIVERA,                                      :
                                                    :
                          Plaintiff,                :
                                                    :          **MEMORANDUM AND ORDER**
              -against-                             :          16-cv-1105 (DLI)
                                                    :
DEA SPECIAL AGENT DAVID T. SAMILO,                  :
                                                    :
                          Defendant.                :
--------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

On March 4, 2016, Plaintiff Jouhan Rivera ("Plaintiff") initiated this action against Defendant Drug Enforcement Agency Special Agent David T. Samilo ("Samilo") and others for alleged violations of Plaintiff's constitutional rights in connection with his arrest during a traffic stop in 2013. On March 30, 2018, the Court granted in part and denied in part Defendants' motion to dismiss the complaint (the "March 30, 2018 Order"). (Docket Entry No. 58). The Court dismissed all claims against all Defendants except Plaintiff's damages claim against Samilo for injuries allegedly sustained when Samilo allegedly used excessive force when handcuffing Plaintiff during his arrest.

On July 12, 2018, the Court held a pretrial conference. At the conference, the Court asked the parties to submit supplemental briefing to address the application of the intervening case from the United States Supreme Court captioned *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). This opinion addresses that supplemental briefing. For the reasons set forth below, the Court finds that Plaintiff's claim cannot stand under *Ziglar*, and this action is dismissed.

## I.    BACKGROUND

On the evening of October 22, 2013, Samilo and other federal law enforcement officers were surveilling Plaintiff as part of a narcotics investigation.[1]  While following a vehicle in which Plaintiff was a passenger, the officers initiated a traffic stop.  Plaintiff and the driver were searched for weapons.  A search of the vehicle uncovered a duffel bag containing approximately three kilograms of cocaine in the spare tire well of the trunk.  Plaintiff was placed under arrest.  Plaintiff alleges that he told the arresting officers, including Samilo, that he had a hand injury, and that the handcuffs were too tight and aggravating that injury.  Plaintiff alleges that Samilo squeezed the cuffs even tighter, would not let him retrieve a hand brace from the car, and that he sought medical assistance as a result of these injuries.

On March 4, 2016, Plaintiff filed his complaint against Samilo and six other federal officers alleging violations of Plaintiff's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the seminal case in which the Supreme Court found an implied right of action for money damages against federal officers for certain violations of a plaintiff's constitutional rights.  (Docket Entry No. 1.)

On April 21, 2017, the defendants moved to dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(5), 12(b)(6) of the Federal Rules of Civil Procedure, and, in the alternative, for summary judgment pursuant to Rule 56.  (Docket Entry No. 39.)  On March 30, 2018, the Court granted in part and denied in part defendants' motion.  (Docket Entry No. 58.)  The only claim that survived defendants' motion is Plaintiff's claim for a violation of his Fourth Amendment rights against Samilo for allegedly using excessive force in handcuffing Plaintiff.

---

[1]    A complete recitation of the factual and procedural background is contained in the Court's March 30, 2018 Order.  (Docket Entry No. 58).

On June 19, 2017, the Supreme Court issued its decision in *Ziglar v. Abassi*, 137 S.Ct. 1843 (2017), which clarified the analysis to be applied by the lower courts when deciding whether to find an "implied right of action" under *Bivens*.

On July 12, 2018, the Court held a pretrial conference. The Court, *sua sponte*, directed the parties to submit supplemental briefing to address the impact of *Ziglar* on Plaintiff's excessive force claim. The supplemental briefing was completed on August 23, 2018. (*See*, Samilo Br., Docket Entry No. 71; Rivera Br., Docket Entry No. 73; Samilo Rep., Docket Entry No. 75.)

For the reasons that follow, the Court finds that *Ziglar* and separation of powers principles counsel against finding an implied right of action on the facts of this case. Plaintiff's sole remaining claim is dismissed.

## II. DISCUSSION

For a plaintiff to enforce his constitutional rights he must have a cause of action. That is, there must be a statute passed by Congress or a judicially implied claim for relief. Here, Plaintiff cannot point to any statute that would allow him to prosecute this action. The only question is whether there is a judicially implied claim for relief.

### A. *Bivens*

In *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). The *Bivens* Court implied a private right of action under the Fourth Amendment for an unreasonable search and seizure claim against FBI agents for handcuffing a man in his own home without a warrant. *Bivens*, 403 U.S. at 389, 397. Since then, the Supreme Court has recognized *Bivens* claims in only two other

circumstances: (1) under the Fifth Amendment's Due Process Clause for gender discrimination against a congressman for firing his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979), and (2) under the Eighth Amendment's prohibition on cruel and unusual punishment against prison officials for failure to treat an inmate's asthma which led to his death, *Carlson v. Green*, 446 U.S. 14 (1980).

"Although *Carlson* and *Davis* were handed down within a decade of *Bivens*, they mark the beginning of a still-unbroken period of nearly 40 years since the Supreme Court has authorized a *Bivens* damages action covering the exercise of any other constitutional right." *Sanford v. Bruno*, 2018 WL 2198759, at *3 (E.D.N.Y. May 14, 2018). This supports the majority's observation in *Malesko* that, since *Bivens*, "we have retreated from our previous willingness to imply a cause of action where Congress has not provided one." 534 U.S. at 67 n.3. It also supports the even stronger observation of two concurring Justices that

> *Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be "implied" by the mere existence of a statutory or constitutional prohibition. . . . [W]e have abandoned that power to invent "implications" in the statutory field. There is even greater reason to abandon it in the constitutional field, since an "implication" imagined in the Constitution can presumably not even be repudiated by Congress.

*Malesko*, 534 U.S. at 75 (Scalia, J., concurring) (internal citations omitted).

Notwithstanding the Supreme Court's retreat, lower courts have relied on *Bivens* as a blueprint for implying causes of action. Although acknowledging that the judicial damage remedy in *Bivens* itself is "extraordinary" and should "rarely if ever be applied in 'new contexts,'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (en banc) (quoting *Malesko*, 534 U.S. at 69), lower courts have recognized implied rights of action premised on constitutional rights other than the three identified by the Supreme Court.

**B.** **_Ziglar_**

Recently, however, the Supreme Court has re-emphasized that courts should not imply rights and remedies as a matter of course, "no matter how desirable that might be as a policy matter, or how compatible with the statute [or constitutional provision]." *Ziglar*, 137 S. Ct. at 1856 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)). "Given the notable change in the [Supreme] Court's approach to recognizing implied causes of action . . . the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

*Ziglar* also made it clear that the only recognized implied rights of action are the narrow situations presented in *Bivens*, *Davis*, and *Carlson*. Practically speaking, this means that, post-*Ziglar*, even where a Court of Appeals had previously found a *Bivens* remedy, that court or a district court must reconsider whether one is available. *See*, 137 S. Ct. at 1865 (vacating the Second Circuit's holding in *Turkmen v. Hasty*, 789 F.3d 218 (2015) (panel decision), and *Turkmen v. Hasty*, 808 F.3d 197 (2015) (en banc), because the court failed to conduct the appropriate *Bivens* analysis); *See also*, *Vanderklok v. United States*, 868 F.3d 189, 199-200 (3d Cir. 2017) (holding that, even though the Third Circuit previously had found a *Bivens* remedy in a First Amendment retaliation context, that precedent no longer holds in light of *Ziglar* and the court "must look at the issue anew in this particular context, . . . and as it pertains to this particular category of defendants").

The recognition of a cause of action is context specific. The Supreme Court has set out a rigorous two-step inquiry for courts to determine whether to imply a *Bivens* cause of action in a new context or against a new category of defendants. First, the court must determine whether a plaintiff's claims arise in a new *Bivens* context. "If the case is different in a meaningful way from

previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Ziglar*, 137 S.Ct. at 1859. The Supreme Court did not offer an "exhaustive list of differences that are meaningful enough to make a given context a new one," but it did offer examples that "might prove instructive." *Id.* at 1859-60. The Court held that

> [a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

If the case presents a new factual context for a *Bivens* claim, then the court proceeds to the second step and asks, "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Irrespective of whether an alternative remedy exists, a federal court must also conduct a specific analysis, "paying particular heed . . . to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.* (internal quotation marks omitted). This second step often is referred to as the special factors analysis. "The Court's precedents now make clear that a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (internal quotation marks omitted).

Although the Supreme Court "has not defined the phrase 'special factors counselling hesitation,'" the Court has observed that "[t]he necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at

1857-58.  Put more simply, "to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative."  *Id.* at 1858.

C.  **Analysis**

1.  This Case Presents a New *Bivens* Context

What remains of this case is a claim by an arrestee under the Fourth Amendment for use of excessive force incident to a lawful arrest executed pursuant to probable cause.  That arrest arose from a lawful vehicle search that itself was executed pursuant to probable cause.  This is not one of the narrow situations presented in *Bivens*, *Davis*, and *Carlson*.

Both *Davis* and *Carlson* are distinguished easily on both their facts and the constitutional right at issue.  *Davis* involved a Fifth Amendment claim against a Congressman for firing his female secretary.  *Carlson* involved an Eighth Amendment claim against prison officials for failure to treat an inmate's asthma.

Whether this case presents a new context from *Bivens* itself requires a closer examination because, as Plaintiff points out, *Bivens* and the present case involve Fourth Amendment claims for actions of federal narcotics officers of similar rank.  Plaintiff essentially argues that the *Ziglar* Court's narrow preservation of *Bivens* establishes that the Court "never indicated an intent to remove a Fourth Amendment claim from the list of long recognized *Bivens* claims."  (Rivera Br. (Docket Entry No. 73) at 3.)  But it is clear from *Ziglar* and other Supreme Court precedent that simply because a plaintiff asserts the same constitutional right as one of the three recognized cases—the Fourth Amendment (*Bivens*), the Fifth Amendment (*Davis*), or the Eighth Amendment (*Carlson*)—does not mean the case does not present a new context.  *Ziglar*, 137 S. Ct. at 1859.  "[*Ziglar*] makes plain that even though a *Bivens* action lies for some constitutional violations (like the Fourth Amendment claim in *Bivens*), it does not lie for all violations (like the Fourth

Amendment claim in [*Ziglar*]).” *Rodriguez v. Swartz*, 899 F.3d 719, 737 (9th Cir. 2018). The Supreme Court has refused to extend *Bivens* to contexts beyond the specific clauses of the specific amendments for which a cause of action had been implied, or even to other classes of defendants facing liability under those same clauses. *Compare*, *Davis*, 442 U.S. at 243-44 (permitting *Bivens* action against a Congressman for violation of an employee’s Fifth Amendment due process rights) *with Schweiker v. Chilicky*, 487 U.S. 412, 428-29 (1988) (refusing to permit a *Bivens* action for violations of Fifth Amendment due process rights in a social security context). *See also*, *Wilkie*, 551 U.S. at 541 (refusing to extend *Bivens* to invasion of property rights under the Fifth Amendment); *Malesko*, 534 U.S. at 63 (refusing to extend *Bivens* to alleged Eighth Amendment violations by employees of private prisons).

Instead of looking only to which constitutional amendment is cited, the Court must assess *Ziglar*’s non-exhaustive list of factors, including “the constitutional *right* at issue.” *Ziglar*, 137 S. Ct. at 1859–60 (emphasis added). The constitutional right at issue in *Bivens* was the plaintiff’s privacy right. *Bivens*, 403 U.S. at 390 (“[T]he rights that [Bivens] asserts [are] primarily rights of privacy . . .”); *Id.* at 408 (Harlan, J., concurring) (“The personal interests protected by the Fourth Amendment are those we attempt to capture by the notion of ‘privacy.’”). In this case, Plaintiff’s claim is not for a violation of his privacy rights, or for a warrantless invasion of his home and the unreasonable search and seizure of his property. Instead, Plaintiff’s claim arises from the force allegedly applied in making a lawful street arrest.

The case also differs meaningfully from *Bivens* because the “legal mandate under which the officer was operating” is materially different. Plaintiff’s arrest was made upon probable cause after a valid vehicle search conducted with probable cause. (*See*, March 30, 2018 Order at 16-19).

The officers in *Bivens* arrested the plaintiff in his home without a warrant and without probable cause. *Bivens*, 403 U.S. at 389, n.1.

For the foregoing reasons, this case differs meaningfully from *Bivens*. The Court must now conduct the second step of the *Ziglar* inquiry.

## 2. Alternative Remedies and Special Factors

The next step of the analysis focuses on whether there are any special factors counseling against a judicially-created damages remedy, including whether any alternative remedies existed. Here, Plaintiff had an available tort remedy under the Federal Tort Claims Act ("FTCA"), which provides congressional consent for certain tort claims brought against the United States, including certain claims about abusive federal law enforcement officers. *See*, 28 U.S.C. §§ 2674, 2680(h).[2]

Plaintiff argues that, because the statute of limitations of his FTCA claim has run, he has no effective alternative avenue for redress. Plaintiff misreads the case law. The present unavailability of an FTCA claim is immaterial to the analysis of whether the existence of an adequate alternative process counsels in favor of judicial restraint. *See*, *Sanford*, 2018 WL 2198759, at *7 (The remedies that existed "to address plaintiff's situation here are thus adequate

---

[2]     The FTCA gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of a federal employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This broad waiver of sovereign immunity is subject to a number of exceptions set forth in § 2680. One such exception, relating to intentional torts, preserves the Government's immunity from suit for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." § 2680(h). The Supreme Court has referred to § 2680(h) as the "intentional tort exception." *Levin v. United States*, 568 U.S. 503, 506 (2013) (internal quotation marks omitted).

In 1974, after the Supreme Court decided *Bivens* in 1971, Congress carved out an exception to § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers. *See*, Act of Mar. 16, 1974, Pub. L. 93–253, § 2, 88 Stat. 50. Known as the "law enforcement proviso," this provision extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, that are based on the "acts or omissions of investigative or law enforcement officers." § 2680(h). The proviso defines "'investigative or law enforcement officer'" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

for purposes of determining whether to imply a *Bivens* remedy—even though those remedies did not work in this instance."); *See also*, *Vega v. United States*, 881 F.3d 1146, 1153-54 (9th Cir. 2018) (a plaintiff's failure to bring negligence claims in addition to *Bivens* claims does not affect the status of the negligence claims as an adequate alternative process). That Plaintiff allowed the statute of limitations to run on his claim does not change the separation of powers principles at play when assessing whether Congress has established an alternative remedy. "[J]ust because Congress has not enacted a remedial scheme that would satisfy plaintiff on the facts of his particular case does not mean that the alternative remedial scheme that it did pass is inadequate under *Ziglar*." *Sanford*, 2018 WL 2198759, at *6.

Additionally, Plaintiff had some avenues for redress under New York state law to the extent he claimed that Samilo's actions placed him outside the scope of his federal employment. *See*, *Vanderklok*, 868 F.3d at 204 (where the United States does not substitute itself for the individual defendant, "claims against an egregiously erring government employee could not be dismissed on sovereign immunity grounds" and could proceed against the individual in state court). The ultimate success of a potential state law claim is irrelevant to the alternative process inquiry. *See*, *Vega*, 881 F.3d at 1155 ("That Vega's state law claims ultimately failed to satisfy the requirements of [state] law . . . does not mean that he did not have access to alternative or meaningful remedies.") (citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012)). Nor is it relevant whether state law claims or claims brought under the FTCA "provide complete relief." *Bush v. Lucas*, 462 U.S. 367, 387 (1983). "[S]tate remedies and a potential *Bivens* remedy need not be perfectly congruent." *Minneci*, 565 U.S. at 619.

The existence of these alternative avenues for redress is a special factor counseling against an implied right of action. As *Ziglar* instructs:

if Congress has created "any alternative, existing process for protecting the [injured party's] interest" that itself may "amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie, supra,* at 550, 127 S.Ct. 2588; *see also Bush, supra,* at 385–388, 103 S.Ct. 2404 (recognizing that civil-service regulations provided alternative means for relief); *Malesko,* 534 U.S., at 73–74, 122 S.Ct. 515 (recognizing that state tort law provided alternative means for relief); *Minneci, supra,* at 127–130, 132 S.Ct. 617 (same).

*Ziglar* at 1858. An alternative remedy need not be "perfectly congruent" with *Bivens*. *Minneci*, 565 U.S. at 129. "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Ziglar*, 137 S. Ct. at 1863 (citing cases).

The Court need not examine all alternative existing processes, and the Court need not "parse the specific applicability of th[e] web of . . . remedies [available] in [plaintiff's] circumstances," in order to decline inferring a new remedy. *Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 921 (D.C. Cir. 2018). So long as plaintiff had an "avenue for some redress, bedrock principles of separation of powers foreclose . . . new substantive liability." *Malesko*, 534 U.S. at 59. These alternative remedies are sufficient to counsel hesitation here. *See*, *Vega*, 881 F.3d at 1153-54. Because adequate alternative remedies existed here, the Court need not address whether any other special factors counsel hesitation. *See*, *Id.* at 1153.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's sole remaining claim is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
     March 31, 2019

                                 /s/
                              DORA L. IRIZARRY
                                Chief Judge